**JOSEPH A. VITA**
**ATTORNEY AT LAW**
327 Irving Avenue
Port Chester, New York 10573
Telephone 914-939-5401
Fax 914-690-2007

In light of Mr. Draughn's excellent record in prison, I will reduce the sentence from 188 months to 176 months. An Amended Judgment will be issued.

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.

VIA ECF

October 8, 2019                                                                      12/5/19

Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

        Re: <u>United States v. John Draughn</u>
            10 CR 24 (CS)

Dear Judge Seibel:

        I write to request a reduction of sentence pursuant to Section 404 of the First Step Act of

2018 for Mr. Draughn. Section 404 of the First Step Act of 2018, enacted on December 21,

2018, makes the Fair Sentencing Act of 2010 ("FSA") apply retroactively and authorizes a

district court to impose a reduced sentence for crack-cocaine convictions where the statutory

penalty provisions of the FSA would have applied had it been in effect at the time of the original

sentencing.

        Mr. Draughn, who was arrested on June 4, 2009, has served over 10 years of the 15 year,

6 month sentence imposed by your honor on December 14, 2010.   During his more than a

decade in prison, he has not had a single disciplinary infraction. Instead, he has worked steadily

in the BOP UNICOR work program, developed valuable job skills, completed over 40 education

courses, earning an Associates Degree and presently working to complete his Bachelor Degree in

Business Administration, while also completing Drug Education and release reentry programs.

At the time of sentencing,  the minimum sentence permissible by statute on the top count of conviction was 10 years. The minimum sentence has now been reduced to five years. For the reasons set forth more fully below, I ask the Court to resentence Mr. Draughn to a sentence of time served.

**<u>Facts and Procedural History</u>**

1.      Criminal Conduct and Arrest

In March 2009, John Draughn was introduced to an individual he believed to be a prospective purchaser of narcotics but who was in fact an undercover officer (UC).

Between March 25, 2009 and May 20, 2009 Draughn sold approximately 70 grams of crack cocaine and 195 grams of powder cocaine to the UC.  This was inclusive of a transaction on May 5, 2009, in which Draughn met with the UC at a gas station in Westchester County, New York and sold him 58 grams of crack cocaine.

Subsequently, on June 4, 2009, Draughn met with the same UC for the purpose of selling him an additional quantity of crack cocaine and powder cocaine. He was arrested and found to be in possession of approximately 18 grams of crack cocaine and 544 grams of powder cocaine. He was charged on a complaint in the United States District Court and remanded.

2.      Indictment

On January 12, 2010 a three count indictment was filed in the District Court charging Draughn as follows:

Count one – On May 5, 2009 distributing and possessing with intent to distribute 50 grams or more of crack. [21 USC 812, 841(a)(1) and 841(b)(1)(A)].

Count two – On June 4, 2009 distributing and possessing with intent to distribute 5 grams or more of crack. [21 USC 812, 841(a)(1) and 841(b)(1)(B)].

Count three – On June 4, 2009 distributing and possessing with intent to distribute 500 grams or more of cocaine. [21 USC 812, 841(a)(1) and 841(b)(1)(B)].

3.      The Plea

On July 13, 2010 the defendant entered a guilty plea pursuant to a written plea agreement to the three count indictment. In his plea allocution he admitted his involvement in the distribution of 50 grams or more of crack cocaine (count one); 5 grams or more of crack cocaine (count two); and 500 grams or more of powder cocaine (count three).

The Court in the course of the plea hearing informed Mr. Draughn, among other things, of the potential maximum sentence that could be imposed as to each count; life for count 1 and forty years for count 2 and 3; as well as the applicable mandatory minimum sentence of 10 years on count 1 and 5 years each on counts 2 and 3.

Sentencing was scheduled for October 22, 2010.

4.      On August 4, 2010 the Fair Sentencing Act of 2010 was signed into law.

The FSA raised the quantity of crack cocaine necessary to trigger a ten year mandatory minimum sentence and life maximum from 50 grams to 280 grams; and raised the quantity of crack cocaine necessary to trigger a five year mandatory minimum and 40 year maximum from 5 grams to 28 grams. Further, the FSA provided the Sentencing Commission with the emergency authority to promulgate all necessary amendments to the Sentencing Guidelines within 90 days of the FSA's August 3, 2010 enactment.  The consequent amendments to the Sentencing Guidelines became effective no latter than November 1, 2010.

5.      Motion to Apply FSA to Draughn

On October 19, 2010, defendant moved to apply the provisions of the Fair Sentencing Act of 2010 to his case.

Draughn argued that if the Court were to apply the FSA, the statutory impact would include;

        a)      reducing the mandatory minimum sentences for the crack offenses.

        b)      reducing the potential maximum sentences for the crack offenses.

        c)      reducing his offense level as a career offender and applicable sentence guideline

calculation (applicable to all counts) from a range of 262-327 months to 188-235 months.

The sentencing was adjourned to enable the parties to fully brief the FSA motion. Both sides filed Memorandum of Law in support of their respective positions.

Draughn argued among other things that Congress intended the Fair Sentencing Act to have retrospective effect.

The Government's primary argument was that under Title 1, USC, Section 109 (the "Saving Statute"), the harsher pre- FSA penalties should apply because they were not expressly repealed by FSA.

The Court on December 1, 2010 issued an order requesting further briefing on the Application of the November 1, 2010 Sentence Guidelines under the assumption that the Court will not apply the FSA.

6.      PSR Investigation and Recommendation

In it's Pre-sentence Report (PSR) the Probation Department determined a base offense level of 37 based upon the fact that Draughn was a career offender and the top B1A charge carried a maximum sentence of life. The total offense level was reduced to 34 with acceptance of responsibility credit resulting in a sentence guideline range with criminal history category VI of 262-327 months. (PSR. Par. 45-47, 63, 104).

Probation officer Plummer recommended a below guideline sentence of 168 months. (PSR. P. 27)

To justify her recommendation, Officer Plummer noted:

"Although factors such as defendant's social background are usually not normally considered for a departure from the guidelines, the Court may wish to consider a variance. Draughn was initially reared by both parents who were battling drug addictions. At age 6, after completing the first grade, his parents removed he and his siblings from school as they were going to home school them. Due to their continued drug use they did not follow through."

She observed that Draughn returned to school but dropped out after completing the 7th

grade. He earned his GED while incarcerated.

She noted that when Draughn was 12 years old his parents began abusing crack cocaine and that his mother subsequently abandoned the family due to her drug addiction and mental illness.  "Draughn and his six siblings remained with his father whose drug usage increased as he had difficulty caring for Draughn and his six siblings."

Officer Plummer concluded: "Based on Draughn's home life during his formative years, which clearly lacked any form of guidance, the subject was exposed to drug use, parental neglect, education neglect and abandonment. We note that we neither condone nor make excuses for his criminal conduct, Draughn can be viewed as a victim himself as he was never given the opportunity or the tools necessary to be a productive member of society. Significantly, based on Draughn's criminal history, he undoubtedly meets the criteria of a career offender. While we cannot minimize Draughn's criminal conduct, a term of 262 months' imprisonment, the minimum of the guideline range, simply would not benefit this young man. As such, we respectfully recommend a sentence of 168 months' imprisonment. This variance from the guideline range, pursuant to the factors listed in 18 U.S.C. 3553(a), will serve as adequate punishment and allow the defendant an opportunity to finally redeem himself and become a productive member of society." (PSR. 27-28).

7.      Sentence Hearing

Judge Seibel ruled that the FSA did not apply retrospectively.  She acknowledged that had it applied the sentence guideline range would be 188 to 235 months.

In not applying the FSA crack weights, Judge Seibel determined that Draughn potential maximum sentence was life. Therefore as a career offender his base offense level was 37, adjusted offense level was 34, and the applicable guideline range 262-327 months.

Other than arguing for application of the FSA and the application of lesser guideline career offender base offense 34 number based upon the reduced crack cocaine weight mandated by the emergency amendments to the sentence guidelines, defendant did not object to the

guideline calculations.

Draughn's counsel advocated for a ten year sentence.

Judge Seibel indicated emphatically "... based on the individual characteristics at issue in this sentencing, I don't think I would go below ten years, even if there were no mandatory minimum." and, further on "... there is no way on a record like this that I would give the defendant less than ten years, anyway."

Judge Seibel acknowledged that the sentence guideline range of 262-327 months was her "starting point" in determining an appropriate sentence for Mr. Draughn.

With respect to the defendant's history and characteristics, she noted that Draughn's significant criminal history was a negative factor and the horrific circumstances of his upbringing was a mitigating factor. Also positive was continued family support and the absence of violence associated with his drug dealing.

She also considered the probation department's positive recommendation and the defendant's remorse and the insight expressed regarding his past criminal conduct.

On the factor of unwarranted sentence disparity 18 U.S.C. 3553(a)(6) the Court stressed "Of course, I've considered the sentencing guidelines, and I have also in this case considered the need to avoid marked sentence disparities among similarly situated defendants."

"Mr. Vita has done an outstanding job advocating for his client. But what he's asked for is the sentence that Mr. Draughn would get if he had committed these crimes with no criminal history. And I think it would lead to unwarranted disparity for me to give a sentence that overlooks the fact that the defendant has done the same thing and been convicted for it five times before. So I cannot go as low as Mr. Vita would like me to go." ...

"On the other hand, even the low end of the guidelines range is 22 years, and that's too much for somebody who, as I said, has not engaged in acts of violence and who had a pretty awful start in life."

"So in determining what sentence is sufficient, but not greater than necessary, I've

considered all these factors, and I'm going to impose a sentence of 188 months."

The Court while not sentencing defendant to the term recommended by probation of 168 months, imposed what Judge Seibel calculated and perceived to be a sentence (188 months) which was significantly below the "starting point" guideline range which she determined of 262-327 months.

8.     The Supreme Court's Decision in *Dorsey* v. *United States*

On June 21, 2012, almost a year and a half after Draughn's sentencing, the United States Supreme Court handed down its decision in *Dorsey* v. *United States,* 132 S. Ct. 2321 (2012), determining "whether the Act's more lenient penalty provisions apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3." *Id* at 2326. In a 5-4 decision, the Supreme Court "conclude[d] that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders." *Id* at 2332. Accordingly, the Court held that FSA's trigger thresholds apply to all defendants, like Draughn, sentenced on or after August 3, 2010, irrespective of when they committed their offenses. *Id* at 2336.

9.     Draughn's appeal

Draughn appealed his sentence, arguing that the District Court erred in refusing to apply the FSA to his case, and thus committed procedural error in calculating his offense level under U.S.S.G. 4B1.1.  The Government conceded that in light of *Dorsey,* the Court erred by calculating Draughn's base offense level under the career offender guideline using pre-FSA statutory terms of imprisonment, but argued that his appeal was foreclosed by his

*7*

valid appellate waiver. The Government further argued that, even if Draughn had not waived his appeal of his sentence, he would not be entitled to relief from any error regarding the application of the FSA or the career offender guideline because the Court sentenced him to more than five years above the erroneously-applied mandatory minimum and at the bottom of the properly-calculated Guidelines range, demonstrating that the Court would not have sentenced below that mandatory minimum if given the opportunity, and, therefore, any error was harmless.

On January 11, 2013, the Second Circuit issued a summary order affirming the judgment of the Court, holding that because Draughn was sentenced to less than the range to which he had stipulated to in his plea agreement, he had waived his right to appeal. *See United States* v. *Draughn,* 489 Fed. Appx 524 (2d Cir. 2013). *See also United States* v. *Harrison,* 699 F.3d 158 (2d Cir. 2012) (concluding that changes in the law caused by the FSA, and, more specifically, *Dorsey's* interpretation of the retroactivity of the FSA, did not constitute one of the extraordinary circumstances under which an appellate waiver would be deemed unenforceable).

10.    Draughn's Coram Nobis Petition

On November 16, 2016 Draughn filed a Petition for a writ of error *coram nobis* claiming that his should be vacated because his sentence was constitutionally invalid. The District Court by order dated May 10, 2017 denied the Petition on procedural grounds as untimely and barred by defendant's plea agreement.

**Mr. Draughn is eligible for a sentence reduction.**

On August 3, 2010, Congress enacted the Fair Sentencing Act. It did so because the Sentencing Commission and the public had long concluded that the penalty scheme for crack cocaine offenses was far too harsh and had a disparate impact on African American defendants. *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). Specifically, section 2 of the FSA changed the penalty structure for crack offenses, as follows:

- Section 841(b)(1)(C) provides for a sentencing range of up to 20 years if the offense involved less than 28 grams or an unspecified amount of crack cocaine;

- Section 841(b)(1)(B)(iii) provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack cocaine; and,

- Section 841(b)(1)(A)(iii) provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" of crack cocaine.

21 U.S.C. § 841(b) (2018); *see Dorsey,* 567 U.S. at 269 (explaining effect of Section 2 of the FSA).

The FSA went into effect immediately upon enactment on August 3, 2010, and the Supreme Court held that the new penalty structure would apply to any defendant sentenced after August 3, 2010, even if the offense was committed prior to that date. *Dorsey*, 567 U.S. at 278.

But the FSA did not apply retroactively, leaving intact many unjust sentences that were imposed from 1986 through 2010 under the pre-FSA penalty structure. The First Step Act of 2018 has now created a remedy to retroactively reduce sentences of this type. Courts may now

impose reduced sentences on any prisoner who is still serving a sentence for a crack-cocaine offense if that sentence was imposed when the pre-FSA penalty structure still applied.

Section 404 of the First Step Act establishes its remedy in two steps, and Mr. Draughn meets each. First, the Act defines what offenses are covered by its remedy:

> Definition of Covered Offense:  In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

Mr. Draughns' offenses include "covered offenses." Mr. Draughn pleaded guilty to offenses which included distribution and possession with intent to distribute crack cocaine. The statutory penalties of these counts of conviction were modified by the Fair Sentencing Act. And he committed his violation before August 3, 2010.

Second, the Act provides the circumstances under which a district court can reduce the sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced:  A court that imposed a sentence for a covered offense may, on motion of the defendant . . . , impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(*Id.*, Sec. 404(b).)

This provision plainly applies to Mr. Draughn because the District Court previously "imposed a sentence" on him "for a covered offense," and he is moving for imposition of a reduced sentence. Thus, this Court can now "impose a reduced sentence" for Mr. Draughn's offenses as if the FSA were in effect.

The Act provides narrow limitations on this resentencing power. A court shall not entertain a motion made under Section 404 of the First Step Act to reduce a sentence "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or "if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." (*Id.*, Sec. 404(b).) Neither of these limitations applies to Mr. Draughn.

In sum, proving eligibility under the First Step Act is relatively simple. A defendant is eligible if he was convicted of a crack-cocaine offense, was sentenced when the pre-FSA statutory penalties were still in effect, and continues to serve a sentence that has not already been reduced to post-FSA levels.  Because Mr. Draughn satisfies all of these requirements, the Court has the authority to impose a reduced sentence.

Mr. Draughn is precisely the kind of defendant for which the First Step was enacted – an African American man serving an extraordinarily long sentence for distributing crack cocaine because of the irrational disparity in the sentencing guidelines between crack and powder cocaine.

**The Court should impose a reduced sentence of time served, to be followed by 5 years of supervised release.**

The only guidance Congress has given regarding the authorized extent of Section 404 relief is to say that the district court may impose a reduced sentence "as if" the FSA's reduced crack-cocaine penalties "were in effect at the time the covered offense was committed." This broad grant of resentencing authority contains one implied limitation, *viz.,* that the court cannot impose a sentence lower than the statutory mandatory minimum applicable under the FSA to the

defendant's offense of conviction; which in the subject case is now 5 years.

At the time of sentencing, your honor imposed a sentence below the applicable Guidelines range of 262-327 months. When you sentenced Mr. Draughn to 188 months in jail your discretion was anchored both by the statutory mandatory minimum of 10 years and also by the Guidelines range of 262-327 months. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) ("The Guidelines are the framework for sentencing and anchor the district court's discretion." (quotations and alterations omitted)).

In *United States v. Fagans*, 406 F.3d 138, 141 (2d Cir. 2005), the Second Circuit noted the importance of the Guidelines in anchoring judge's discretion: "In many circumstances, an incorrect calculation of the applicable Guidelines range will taint not only a Guidelines sentence, if one is imposed but also a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference. *See United States v. Rubenstein* 403, F.3d 93, 98-99 (2d Cir. 2005)."

When resentencing Mr. Draughn, this Court has the authority to consider any relevant sentencing factor, including post-sentence rehabilitation. *See United States v. Whitmore*, 573 Fed. App'x. at 25 ("district court's re-sentencing [under 2010 FSA] is to be conducted on a blank slate") (citing *Pepper v. United States*, 562 U.S. 476, 507 (2011)).

In support of Mr. Draughn's request for a sentence reduction I have attached the Bureau of Prison records for his term of incarceration (exhibit A) which include:

1) summary reentry progress report
2) inmate educational transcript
3) inmate disciplinary record
4) inmate work history
5) certificates of completion (5)

I have also attached:

exhibit B - letter of support from Melissa Draughn - spouse

exhibit C  - the original pre-sentence report and recommendation addendum

exhibit D - supplemental pre-sentence report

exhibit E - original sentence transcript

Mr. Draughn has been a model inmate. He does not have a single disciplinary infraction. He has completed over 40 educational programs, earning an Associate Degree in Behavior Science and Social Science and working toward his Bachelor Degree in Business Administration. He has also completed a Drug Education program.  He has a consistent work history at BOP and "receives outstanding work evaluations from his detail supervisor."  Mr. Draughn has paid his financial obligation in the Court case.  He was transferred to FCI Fort Dix in 2015 via a lesser security transfer and is classified as a Low/In custody level inmate.  His projected release date is January 26, 2023.

A letter of support from his wife is attached.  His release plan is to reside with his wife and son, obtain employment, continue his education to complete his BA ultimately obtain a Masters Degree in Business Administration.

When Mr. Draughn addressed the Court on December 14, 2010 before you pronounced sentence he made a number of statements and promises.  He indicated he was extremely sorry for his conduct.  He expressed regret about the pain he caused his family and society.  He also acknowledged that while he could not change the past, he could do better with his own life, maintain a positive outlook and attitude, keep himself busy, and make amends so that he could be a productive member of society and a good father for his son, who was born shortly after he was arrested.

He has shown by his conduct in the past decade while serving the federal sentence that

these were not empty words.

Your honor indicated at the time you pronounced sentence that a sentence of 188 months was one sufficient but not greater than necessary to serve the purposes of sentencing, noting "I just can't see my way to going any lower than that, given the five previous chances the defendant had to straighten himself out after a conviction and, as an adult, choosing not to do so. "(Sentence transcript, p. 45).

I am requesting that the Court reconsider it's position based upon (a) Mr. Draughn's exemplary post-sentence conduct; (b) the dramatic reduction in the applicable guideline range from 262-327 months to 188-235 months; and (c) the need to effectuate the intent of congress when it passed the FSA.

## Conclusion

Section 404 grants the district courts broad discretion to reduce sentences imposed, under the excessively-harsh penalty structure that Congress has now renounced. In passing this legislation, Congress was well aware that these long crack cocaine sentences disproportionally were imposed on African American men, like Mr. Draughn.

Mr. Draughn is now 46 years old. His record shows that he is genuinely remorseful, changed for the better and no danger to society. Mr. Draughn has been punished enough. I ask the Court to reduce Mr. Draughns' sentence to a sentence of time served, which, with good time credit, is the equivalent of almost 12 years, followed by 5 years of supervised release, the mandatory minimum term of supervision.

Respectfully submitted,

/S/ Joseph A. Vita

Joseph A. Vita